JOSEPH GARLINGHOUSE, WHEELER REED AND AMOS DIXON *v.* JOHN DIXON AND JAMES B. WELLES.

A mistake in a deed, or other written instrument, when proved to the satisfaction of the Court, is a good ground for refusing relief to which complainant would otherwise be entitled.

IN August, 1836, John Dixon, of Ontario county, New York, employed Seneca Hale, of Lenawee county, Michigan, to purchase government lands for him, and left with Hale $1,800, for which he took a receipt. On December 14th, 1836, John Dixon assigned all his property, real and personal, to complainants, in trust for his creditors. The assignment, among other things, stated Dixon was the owner of, and had the legal or equitable estate in, divers tracts and parcels of land in Michigan, which, having been purchased by his agents, who had not furnished him with a description or statement of such purchases, he was unable to particularise or describe; but meaning and intending the said lands, and all his estate and interest therein, should pass by his assignment to complainants, he thereby granted, bargained, sold, assigned, conveyed, and confirmed to complainants, all and singular the lands, tenements, hereditaments, and estate whatsoever, owned by, or belonging to him, or in which he had any right or inte-

rest whatsoever, in law or equity, in severalty, or jointly with any other person or persons, wherever the same might be, in Michigan, and all the right, title, interest, property, and estate, whatsoever, in law or equity, of, in, or to any such lands or real estate, and all vouchers, receipts, contracts, agreements, certificates or securities whatsoever, relating or in any wise appertaining to the same. On January 27th, 1837, at the request of J. Dixon, Hale con-veyed, and procured to be conveyed by one Brown, four hundred and eighty acres of land to Welles, the same having been purchased with the money mentioned in the aforesaid receipt. In August, 1838, complainants filed their bill for a conveyance of these lands by Welles to them, as trustees under the assignment, charging that Welles had notice of the assignment to them, when the lands were conveyed to him by Hale and Brown.

*The defendants answered.* John Dixon stated in his answer that the assignment to complainants was not intended to embrace the money mentioned in the receipt of Hale, or the land that had been purchased with the money; and that it was so understood by complainants and himself at the time, and that instructions to that effect were given to the person who drew the assignment. He further stated, that he had, previous to his assignment to complainants, parted with his interest in the receipt to Robert Dixon, John Cowman, and the defendant, Welles. When he left the money with Hale, he was indebted to Welles as trustee of the estate of Plyn Weller, in the sum of $859.27, money collected by him for Welles on notes belonging to the Weller estate. And, soon after his return from Michigan to the state of New York, where he resided, he received $800 of Robert Dixon, and $500 of John Cowman, and agreed with them that they should share *pro rata*, in the lands to be purchased with the $1,800;

and that, from that time forward, he held the receipt in trust for Robert Dixon, John Cowman, and the defendant Welles. That, on December 9th, 1836, he made the following assignment on the back of the receipt: "I hereby assign, set over, and transfer this instrument, for the use and benefit of those for whom I hold it in trust. Dated this ninth day of December, 1836. *John Dixon.*" Previous to this, he had made a memorandum at the bottom of the receipt, in these words: "Of the above named money, eight hundred dollars belongs to Robert Dixon, five hundred dollars to John Cowman, and the residue to other persons for whom it was received by me in trust." That Welles was not named in the memorandum, as the $859.27 belonged to him as trustee, and he, Dixon, was indebted to him, individually, on a separate account for money borrowed, and did not intend to connect this last debt with the receipt. In January following the assignment to complainants, Dixon was in Michigan, and saw Hale, and informed him of the assignment to complainants, that the receipt was not embraced in it, and that the money left with him, or the lands purchased with it, belonged to Robert Dixon, John Cowman, and defendant Welles. He afterwards saw Welles, and gave him the same information, and thereupon the lands mentioned in the bill were conveyed to Welles, and other lands to Cowman and Robert Dixon.

The answer of Welles set up the same facts, but was on information and belief only, except as to the indebtedness of Dixon, and the conveyance of the land.

Replications were filed, and testimony taken. John Dixon was examined as a witness on behalf of Welles, and Mr. Sibley, the attorney who drew the assignment, on behalf of complainants.

*H. N. Walker*, for complainants.

The memorandum at the foot of the receipt is not signed, and states that, of the money mentioned in the receipt, $800 belonged to Robert Dixon, $500 to Cowman, and the residue to other persons from whom it was received by Dixon *in trust.* Dixon never received any money from Welles in trust. Dixon says in his deposition, he set apart this interest in the receipt to satisfy Welles for money he had collected for him as trustee of the estate of Plyn Weller;—in other words, to pay a debt. The assignment of the receipt on December ninth, is *for the use and benefit of the persons for whom he held the money in trust.* Before any persons can claim, besides Robert Dixon and Cowman, any interest in the receipt, as against complainants, they must show that a portion of the money mentioned in the receipt was actually received from them in trust by Dixon. Welles shows no such thing, but the reverse. If the assignment of the receipt is to be regarded in the light of a contract, and Welles as a party to it, it is inoperative as against the complainants. Dixon testifies Welles had no notice that the assignment under which he now claims had been made, until Dixon informed him of it, in the winter of 1837. It was not, then, so much as a valid agreement, binding on the parties at the time the general assignment was executed. It wanted the assent of Welles, to make it a contract binding on the parties. 12 *J. R.* 190; 3 *J. R.* 534; 7 *J. R.* 470.

*G. Miles*, for defendants.

It was not the intention of the parties to include the Hale receipt, or the lands purchased by him, in the assignment to complainants. The testimony of Dixon, and Mark Sibley, who drew the assignment, is conclusive on this point. The assignment of the receipt on December

ninth, passed Dixon's interest in the money for which the receipt had been given, and his equitable interest in the land·purchased.

THE CHANCELLOR. The assignment to complainants was not intended to embrace the Hale receipt, or the land purchased with the $1,800. The evidence is full and conclusive on this point. The receipt is not mentioned in the schedule of property, and Dixon's testimony is clear and explicit. He testifies to admissions made by two of complainants since the assignment, and to a conversation that took place before the assignment, as well as to what occurred at the time it was drawn up and executed. Sibley, who drew it, says, when that part of it which relates to the real estate in Michigan was read over to Dixon, he expressed some doubts whether it would not pass lands which had been purchased in his name with money that had been deposited with him. Sibley told him it would not, because he was not the owner of, and had no interest in, lands which had been purchased with such trust funds; and that such lands would belong to the depositors, in whosesoever's name the certificate of purchase might have been taken. He had before told Sibley the lands purchased with the money left with Hale were not to be included in the assignment, and that the money had been deposited with him by Robert Dixon, Cowman and Welles, the defendant, in trust. The two former had deposited money with him after his return from Michigan, on an agreement they should share *pro rata* in the purchases to be made by Hale; and he was indebted to Welles as trustee of the Weller· estate, for money he had received belonging to that estate. To carry out his agreement with the former, and secure Welles as trustee, he first made the memorandum at the foot of the receipt, and afterwards

the assignment of the receipt, on December 9th, 1836, five days before his assignment to complainants for the benefit of his creditors. Considering himself thenceforward as having parted with all his interest in the receipt, and as holding it in trust for Robert Dixon, Cowman and Welles, it is not at all surprising he should have stated to Sibley, when he informed him he held the receipt in trust, that the money had been left with him for the purchase of lands. This was literally true in regard to Robert Dixon and Cowman, for one had paid him $800, and the other $500, to be invested in land. He spoke with reference to this money, and did not enter into the history of the receipt; while Sibley understood him to speak of the identical money left with Hale, and gave it as his opinion that the money in Hale's hands, or the lands purchased with it, would not pass by the deed of assignment to complainants.

Accidents and mistakes are a fruitful source of equity jurisdiction, and the Court is frequently called on to give relief against them. Hence, a mistake in drawing a deed, or any other written instrument, when proved beyond all question, to the satisfaction of the Court, is a good ground for refusing relief to a party who would otherwise be entitled to it. *Gillespie* v. *Moon*, 2 *J. C. R.* 585. I have no doubt the deed of assignment was not intended by the parties to embrace the receipt, or lands purchased with the money for which it was given; and shall therefore dismiss complainants' bill with costs.

Bill dismissed, with costs.